**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| WESLEY NEWMAN, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | 1:24-cv-13267 |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| BYRON UDELL & ASSOCIATES, INC. D/B/A ACCUQUOTE | : | **JURY TRIAL DEMANDED** |
| | : | |
| AND | : | |
| | | |
| BROKERCALLS LLC | | |
| | | |
| Defendants. | | |

_____/

Plaintiff Wesley Newman (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

2

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Byron Udell & Associates, Inc. d/b/a AccuQuote ("AccuQuote"), by and through its agent BrokerCalls LLC, violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as sending such calls with illegal pre-recorded voices.

6.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

8.      Plaintiff Wesley Newman is an individual residing in the Northern District of Illinois.

9.      Defendant Byron Udell & Associates, Inc. d/b/a AccuQuote is a corporation that is registered to do business in the State of Illinois.

10.      Defendant BrokerCalls LLC is lead generation company hired by AccuQuote who is headquartered and has its principal place of business in Florida.

**JURISDICTION AND VENUE**

11.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

12.     This Court has general personal jurisdiction over AccuQuote because it is headquartered and has its principal place of business in this District. This court has specific personal jurisdiction over BrokerCalls because it was hired by AccuQuote and contracted with AccuQuote in a contract that, among other things, and upon information and belief, had an Illinois choice of law and forum provision and conducted the illegal telemarketing at issue on behalf of AccuQuote, an Illinois corporation. Moreover, BrokerCalls directed its conduct into Illinois by calling an Illinois resident.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls at issue were orchestrated and designed to obtain business for a company located in this District, and the calls were directed into this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

14.     The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

15.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Cell Phones

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

20.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

21.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

22.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

23.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

24.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

25.     Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A)

prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

## FACTUAL ALLEGATIONS

26.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27.     Plaintiff Newman's telephone number, (940) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

28.     Plaintiff Newman uses the telephone number for his own personal, residential, and household needs and reasons.

29.     Plaintiff Newman does not use the number for business reasons or business use.

30.     The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

31.     The number is assigned to a residential cellular telephone service.

32.     Plaintiff Newman's number has been on the National Do Not Call Registry for years since he registered it on the Registry prior to receiving the calls at issue.

33.     Despite that, Mr. Newman received at least 19 calls from the Defendants from various caller IDs, including 940-204-9149, 857-356-4540, 800-442-9899, and 940-204-9149, between at least 4/26/2022 and 8/11/2022.

34.     Some of these calls were placed with prerecorded messages. For example, during a call the Plaintiff received on 6/24/2022 at 2:43 PM Central time, from the caller ID 940-204-9149, the message played a robot recording of "James with American Benefits on a recorded line. . . . Now I am with American Benefits. Based on our records I

`show that you may qualify for a state regulated final expense insurance plan`

`that may cover 100% of your funeral, burial, or cremation expense."`

35.     During this call, the call was transferred to a licensed insurance agent employed by Defendant AccuQuote, who attempted to sell the Plaintiff a burial contract.

36.     The Plaintiff received at least three more calls on June 24, all of which were transferred to AccuQuote.

37.     In later email correspondence, Defendant BrokerCalls admitted that one of its "publisher sources," a fictitious company named "Aequitas Management Group Inc.," which is not registered as a valid company in any state or jurisdiction, was hired by BrokerCalls to place at least the June 24 calls at issue, which were subsequently transferred to Defendant AccuQuote.

38.     Defendant AccuQuote provided an email for an individual named "Jason Miller" with this fictitious company, and "Jason Miller" provided a putative settlement agreement, but never completed performance under the agreement.

39.     Thereafter, Plaintiff informed Defendant BrokerCalls that he continued to receive calls from BrokerCalls at the same telephone number as the June 24 call, 940-204-9149, among others, and that he did not want to continue to receive calls.

40.     Defendant AccuQuote ratified BrokerCalls's conduct by accepting the multiple leads and referrals generated as a result of BrokerCalls's illegal telemarketing conduct and authorizing BrokerCalls to continue contacting the Plaintiff, including after the Planitff requested that the calls stop.

41.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43.     The FCC has instructed that sellers such as AccuQuote may not avoid liability by outsourcing telemarketing to agents, such as BrokerCalls, and that companies like BrokerCalls cannot avoid liability by outsourcing telemarketing services out to non-existent entities like Aequitas:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

44.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

45.     AccuQuote is liable for telemarketing calls placed by BrokerCalls and the subvendors they hired and which were ultimately placed with the purpose and aim of and using AccuQuote's name to generate customers for AccuQuote, including the Plaintiff.

46.     AccuQuote uses telemarketing and lead generation companies like BrokerCalls who it authorizes to make to phone calls to potential customers, vet potential clients, and then send AccuQuote only the interested ones.

9

47.     AccuQuote controlled the day-to-day activities of BrokerCalls by allowing them to work up the beginning of sales on its behalf and then only speak with interested, pre-qualified customers that met criteria set by AccuQuote.

48.     AccuQuote also could have prohibited BrokerCalls and its subcontractors from using leads generated to numbers on its internal Do Not Call list, let alone calls placed to numbers on the Do Not Call Registry and using highly-illegal prerecorded messages.

49.     They did not.

50.     Finally, AccuQuote could have terminated BrokerCalls once it learned of BrokerCalls's illegal marketing conduct.

51.     It did not.

52.     Moreover, BrokerCalls could have terminated its fictious subcontractor Aequitas once it learned of their illegal conduct.

53.     They did not. In fact, by their own admission, they paid for invoices for calls generated by Aequitas.

54.     A reasonable seller like AccuQuote or a reasonable marketing company like BrokerCalls would investigate why its agents were using illegal outbound telemarketing calls to sell its products to numbers which should have been on both its internal Do Not Call lists and the National Do Not Call list, as well as using highly-illegal prerecorded calls.

55.     Moreover, a reasonable seller would also investigate into the reasons why their agents would be calling numbers to numbers on the Do Not Call Registry with highly illegal prerecorded messages.

56.     They did not.

10

57.     AccuQuote hired BrokerCalls without a proper investigation, and did not terminate them when they were informed of BrokerCalls's illegal calling conduct.

58.     In turn, BrokerCalls hired a non-existent company, Aequitas, without a proper investigation, and did not terminate Aequitas when it was informed of its illegal calling conduct.

59.     As such, AccuQuote knowingly ratified BrokerCalls's conduct, who in turn ratified Aequitas' conduct.

60.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

61.     Plaintiff never consented to receive calls from Defendants.

62.     In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from the Defendants, but the calls continued.

63.     The calls were all placed to sell Defendant AccuQuote's goods and services.

64.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

65.     The Plaintiff never provided her consent or requested the calls.

66.     The aforementioned calls to the Plaintiff were unwanted.

67.     The calls were non-consensual encounters.

68.     The Defendants had the ability to immediately honor Plaintiff's do not call requests, but they did not.

69.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed.

11

In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

71.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

72.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **BrokerCalls Robocall Class**: Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) BrokerCalls, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

>> **AccuQuote Robocall Sub-Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) BrokerCalls, or a third party on their behalf, placed a call using artificial or pre-record messages (3) that advertised, or were intended to advertise, AccuQuote's goods and/or services (4) within the four years prior to the filing of the Complaint.

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

73. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

74. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

75. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

76. This Class Action Complaint seeks injunctive relief and money damages.

77. The Classes, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

78. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion.

79. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

80. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

81. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

82.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

  a.  Whether Defendants sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

  b.  whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class and Sub-Class;

  c.  whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

  d.  Whether Defendants' conduct constitutes a violation of the TCPA; and

  e.  Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

83.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

84.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

85.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

86.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Statutory Violations of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(b)) on behalf of the Robocall Class

87.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

88.    The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

89.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

90.    The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

91.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do
Not Call Registry Class)**

92.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

93.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

94.     Defendants' violations were negligent, willful, or knowing.

95.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

96.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## THIRD CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)**

97.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

98.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

99.  Defendants' violations were negligent, willful, or knowing.

100.  As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.  Injunctive relief prohibiting Defendants from sending calls or calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.  Injunctive relief prohibiting Defendants from calling telephone numbers who had previously asked not to be called except for emergency purposes, in the future;

C.      Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

D.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F.      Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: December 27, 2024

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
N.D. Ill Gen. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Putative Class*

18